UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Marrieo Cartez Williams, | File No. 23-cv-3459 (ECT/ECW) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| City of Minneapolis Police Department; Officer Mohamud Jama, *in his individual, and official capacities*; Officer Andrew Schroeder, *in his individual, and official capacities*; Officer Jeremiah Smersruh, *in his individual, and official capacities*, and John Doe 1–5, | |
| Defendants. | |

---

Marrieo Cartez Williams, Pro Se.

Mark S. Enslin, City of Minneapolis – Attorney's Office, Minneapolis, MN, for Defendants City of Minneapolis Police Department, Officer Mohamud Jama, Officer Andrew Schroeder, and Officer Jeremiah Smersruh.

---

Pro se Plaintiff Marrieo Cartez Williams alleges that three Minneapolis Police officers used excessive force when they arrested him, and then failed to provide him with medical care necessary to treat the injuries they caused. Mr. Williams claims the officers' actions violated the federal constitution, the Minnesota constitution, and 42 U.S.C. § 1981, and were negligent under Minnesota law. Mr. Williams claims the City of Minneapolis is vicariously liable for the officers' actions.

The officers and the City seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The motion will be granted. Several reasons justify this result. The

big problem is that video recorded by the officers' body-worn cameras blatantly contradicts Mr. Williams's allegations regarding the officers' conduct.

I[1]

Video and audio recorded by the officers' body-worn cameras tells a straightforward story. On November 11, 2022, Minneapolis police officers approached a parked car. ECF No. 29 at 0:29–36. Smoke was rising from under the car's the hood, the car's front window was damaged, the driver's airbag had deployed, and Mr. Williams was asleep or unconscious in the driver's seat. *Id.* at 0:39–50, 1:00–10, 1:30–35. Several times, Officer Mohamud Jama knocked on the driver's window and announced he was a police officer, but Mr. Williams did not respond or move. *Id.* at 0:35–52; 1:23–27. Officer Jama opened the driver's door, announcing (again) he was a police officer. *Id.* at 1:27–40. Officer Jama shook Mr. Williams's arm and said, "Hey, it's the police. Hey, can you wake up for me? It's the police." *Id.* at 1:47–55. Mr. Williams woke up. *Id.* at 2:20–30. Officer Jama

---

[1] A Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a Rule 12(b)(6) motion to dismiss. *Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022). In accordance with that standard, the facts are drawn from the operative version of the complaint and documents embraced by it. *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1370 (8th Cir. 2022). Here, the Second Amended Complaint [ECF No. 8] is deemed operative. It is questionable whether Mr. Williams properly filed this version of the pleading—he'd already amended his complaint once and did not, as Rule 15(a)(2) requires, obtain Defendants' consent or the court's leave before filing it. Regardless, it is the version Defendants answered, *see* Answer [ECF No. 25], and it is the version Defendants challenge through their motion, *see* Defs.' Mem. in Supp. [ECF No. 46] at 8. Effectively then, Defendants have consented to the Second Amended Complaint's filing after-the-fact. Though Mr. Williams subsequently filed a fourth version of the pleading [ECF No. 36], this version will not be considered operative because (again) Mr. Williams did not obtain Defendants' consent or the court's leave before filing it. Fed. R. Civ. P. 15(a)(2). Recordings from the officers' body-worn cameras are embraced by the pleadings. *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023).

asked if Mr. Williams was "OK" and if he needed "EMS"; Mr. Williams said "no," and that he was "good." *Id.* at 2:50–56. Mr. Williams denied taking drugs. *Id.* at 2:56–3:00. Officer Jama asked Mr. Williams if he had been in an accident. *Id.* at 3:01–03. Mr. Williams said "no." *Id.* at 3:03–10. Another officer pointed out to Mr. Williams that his car was "smoking," and explained that was what had drawn their attention. *Id.* at 3:10–20. Mr. Williams said the smoke was from "the airbag." *Id.* at 3:20–26. But he twice stated he hadn't hit anything. *Id.* at 3:27–41. Once more Officer Jama asked if Mr. Williams wanted the officers to check him out, "just to make sure"; Mr. Williams declined, exited the car, and began walking away. *Id.* at 3:40–4:05. With Mr. Williams out of the car, two officers observed a plastic baggie containing what they suspected was crack cocaine on the driver's side floor. ECF No. 27 at 8; ECF No. 29-1 at 0:53–1:30. Very soon after, Mr. Williams fled across a parking lot. ECF No. 29-1 at 1:33–48. Two officers caught up with Mr. Williams as he reached the lot's edge. *Id.* at 1:48–2:20. The officers restrained Mr. Williams against a wall adjacent to the parking lot and handcuffed him. *Id.* The officers directed Mr. Williams to stop resisting, explaining that if he did not, they would put him on the ground, but they did not bring him to the ground. *Id.* at 1:45–2:30. The officers walked Mr. Williams back to his vehicle, searched him, and put him in the back of a squad car. *Id.* at 2:23–7:00.

Mr. Williams's account of the arrest is at odds with the body-worn camera recordings. Mr. Williams alleges officers tasered, punched, and kicked him. Second Am. Compl. [ECF No. 8] at 2. In his brief, Mr. Williams claims these actions happened when the officers arrested him and "ma[de] him fall to the ground." ECF No. 36 at 4. Mr.

3

Williams also claims the officers made racist statements, including "jokes" concerning a Minneapolis police officer's alleged murder of Mr. Williams's fifteen-year-old cousin some twenty years earlier. Second Am. Compl. at 2. Mr. Williams claims the officers violated department policy by not filing a use-of-force report. *Id.* Mr. Williams believes the officers "were suspended and sanctioned for breaking police code of conduct." *Id.* at 3. And Mr. Williams alleges that the officers did not provide him with medical care necessary to treat the "serious injuries he suffered when" the officers used "deadly and excessive force[]" on him during the arrest. *Id.*

Some of Mr. Williams's allegations go beyond the circumstances of his arrest. He claims his treatment is consistent with a history of Minneapolis police misconduct. *See id.* at 2 ("Unfortunately, this episode was just another example of decades of abuse by the MPD against the Citizens of Minneapolis."). Mr. Williams names other victims of alleged police misconduct. *Id.* at 2–3. And he cites a United States Department of Justice determination that Minneapolis officers "routinely use excessive force, fail to render aid to people against whom they have used force, and [by their] inadequate review system contribute[] to a pattern of unlawful use of excessive force." *Id.* at 2.

Mr. Williams asserts several claims. Under 42 U.S.C. § 1983, he alleges Defendants violated his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. *See id.* at 1, 2. He asserts a claim under Article I, Section 5 of the Minnesota Constitution. *Id.* at 1. He asserts a claim under 42 U.S.C. § 1981. *Id.* And he asserts a negligence claim under Minnesota law. *Id.* Though Mr. Williams writes on the Second Amended Complaint's first page that he seeks "damage[s] and injunctive

relief," *id.*, in the pleading's final paragraphs following a heading labeled "Relief Request," Mr. Williams seeks only damages "in the amount of $350,000," *id.* at 3.[2]

## II

### A

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018) (quotation omitted). A motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Under that standard, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the non-moving party's favor. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citations omitted). Although the factual allegations need not be detailed, they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

---

[2] Had he persisted in asking for injunctive relief, the request for this remedy would have been dismissed for lack of subject-matter jurisdiction because Mr. Williams lacks Article III standing to pursue it. To seek injunctive relief to protect against future harms, a plaintiff must show a future injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013). For injunctions against police misconduct, the Supreme Court has required a plaintiff to demonstrate that he will encounter an officer again, and that either the officer will behave in the same way toward the plaintiff or that officers are ordered or authorized to act in that manner. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). Mr. Williams does not meet this standard. He alleges only that Minneapolis police officers routinely use excessive force. The Supreme Court rejected an equivalent argument in *Lyons*. *See* 461 U.S. at 105 ("The additional allegation in the complaint that police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.").

A pleading's allegations must "state a claim to relief that is plausible on its face." *Id.* at 570. The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam) (quoting *Magee v. Trs. of the Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)). Courts construe pro se complaints liberally, but pro se litigants "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases). Pro se plaintiffs "are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion—and, by extension, a Rule 12(c) motion—into one for summary judgment, but not when the documents are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation omitted); *see* Fed. R. Civ. P. 12(d). Where no party refutes their authenticity or completeness, *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Abdullah v. Lepinski*, No. 23-cv-121 (ECT/DTS), 2023 WL 5515895, at *1 (D. Minn. Aug. 25, 2023),[3] police body-worn videos "of an incident are

---

[3]   In his Second Amended Complaint, Mr. Williams alleges Officer Jama "tamper[ed] with devices such as a Body worn camera." Second Am. Compl. at 2. This assertion does not call into question the body-worn camera recordings' authenticity. The assertion is conclusory. Mr. Williams does not describe why he suspects tampering occurred. He does not, for example, describe what parts of the recordings were tampered with or what events are falsely portrayed. He alleges no facts that might conceivably be construed to show tampering. Just as important, Defendants argued at length in their motion that the recordings contradicted Mr. Williams's claims, but Mr. Williams did not raise this issue in his response. *See* ECF Nos. 50, 55. In other words, though Mr. Williams alleged tampering in his complaint, he did not defend the allegation in response to Defendants' motion.

6

necessarily embraced by the pleadings" and may be considered in adjudicating a motion for judgment on the pleadings, *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023). A complaint's allegations should not be accepted "if they are blatantly contradicted by video evidence." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (cleaned up).

B

1

Mr. Williams's § 1983 claims under the First, Sixth, and Fourteenth Amendments are dismissal-worthy largely because the circumstances of Mr. Williams's arrest do not implicate rights protected under these amendments. Mr. Williams alleges the officers violated these amendments "by reaching their hands in his vehicle and unlocked [sic] the door without a warrant to do so use [sic] of excessive force by taser [sic], punching, and kicking him." Second Am. Compl. at 2. He alleges Officer Jama violated these amendments "by tampering with devices such as Body worn camera and other evidence like the drug [sic] involved in this police report or civil complaint." *Id.* Mr. Williams does not allege in the Second Amended Complaint that he was engaged in any First Amendment–protected activity when these events occurred. In his opposition brief, Mr. Williams says "Officers violated [his] first amendment rights by using force to intimidate and deter him from what they are doing to arrest for being park [sic] on a city street." ECF No. 36 at 2. But without more, it is not plausible that Mr. Williams's action of sitting in a parked car was expressive activity or implicated some other First Amendment–protected right. The officers' use of force to arrest Mr. Williams did not implicate any Sixth

Amendment rights. If evidence tampering might implicate the Sixth Amendment, as explained earlier, Mr. Williams's allegations do not plausibly show evidence tampering. Finally, "the Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 394–95 (1989)).

2

The officers are entitled to qualified immunity with respect to Mr. Williams's § 1983/Fourth Amendment claim, largely because Mr. Williams does not plausibly allege a Fourth Amendment violation in light of the body-worn-camera recordings. In determining whether the officers have qualified immunity, two questions are answered: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional . . . right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citations omitted); *see also Watson v. Boyd*, 2 F.4th 1106, 1109 (8th Cir. 2021). Courts may consider the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *Id.* "Qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Sok Kong Tr. ex rel. Map Kong v. City of Burnsville*, 960 F.3d 985, 991 (8th Cir. 2020) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)), *cert. denied sub nom. Kong v. City of Burnsville*, 141 S. Ct. 2839 (2021) (mem.). If the material facts are not genuinely disputed, then the constitutionality of an officer's

conduct is a question of law. *Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir. 1992); *see also Pollreis v. Marzolf*, 66 F.4th 726, 732 n.2 (8th Cir. 2023); *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

"For purposes of the second prong, [courts] look to 'the legal rules that were clearly established at the time' the action at issue was taken." *Graham v. Barnette*, 5 F.4th 872, 881 (8th Cir. 2021) (quoting *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004)). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas*, 595 U.S. at 5–6 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). As the Eighth Circuit has explained, a plaintiff can show that a right was clearly established in different ways:

> [1] [A] plaintiff may point to existing circuit precedent that involves sufficiently "similar facts" to "squarely govern[]" the officer's actions such that the officer had "notice that [his] specific use of force [was] unlawful," *Kisela v. Hughes*, 584 U.S. [100, 105] (2018) (per curiam), [2] present "a robust consensus of cases of persuasive authority" doing the same, *see De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017), or [3] demonstrate that a general constitutional rule applied with "obvious clarity" to the facts at issue, *see Rokusek v. Jansen*, 899 F.3d 544, 548 (8th Cir. 2018).

*Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020).

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. An arrest becomes

unreasonable when it is unjustified by probable cause, *see Thurairajah v. City of Fort Smith*, 925 F.3d 979, 983 (8th Cir. 2019), or when officers use excessive force in executing the arrest, *see Graham*, 490 U.S. at 394. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* at 523 (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.* (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)). Several settled rules guide the excessive-force analysis. "An officer's use of force violates the Fourth Amendment if it was 'objectively unreasonable.'" *Pollreis*, 9 F.4th at 747 (quoting *Graham*, 490 U.S. at 394–96).

> Objective unreasonableness is "judged from the perspective of a reasonable officer on the scene," in light of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight."

*Id.* (quoting *Graham*, 490 U.S. at 396).

The unchallenged body-worn camera recordings establish that officers complied—or at least arguably complied—with the Fourth Amendment at every stage of their

encounter with Mr. Williams. The officers reasonably approached and questioned Mr. Williams. Smoke was rising from his car's engine, the car was damaged, he was asleep or unconscious at the wheel, and he was non-responsive to repeated attempts to wake him. These facts gave officers sufficient reason to intervene, both to determine whether Mr. Williams required care, *see Currie v. Aswegan*, 720 F. Supp. 3d 732, 741–43 (D. Minn. 2024) (applying community-caretaking rules), and to investigate whether a crime had occurred, *see United States v. Griswold*, No. 4:19-CR-0032-DGK-01, 2022 WL 4349041, at *1 (W.D. Mo. Sept. 19, 2022) ("The police officers arriving on the scene where Defendant apparently passed out in his car had a reasonable, articulable suspicion that Defendant had committed or was about to commit the crime of driving under the influence."). Once Mr. Williams exited the vehicle, the officers observed suspected narcotics in plain view. Mr. Williams's flight, which closely followed the drugs' discovery, gave officers an additional reason to believe Mr. Williams had committed a crime. *See United States v. McMillion*, 101 F.4th 573, 576 (8th Cir. 2024) (recognizing that unprovoked flight can contribute to establishing reasonable articulable suspicion); *see also United States v. Heyer*, No. 17-cr-94 (SRN/LIB), 2017 WL 3475483, at *3 (D. Minn. Aug. 14, 2017) ("It is well established . . . that flight from law enforcement is a relevant factor in any probable cause determination."). The primary problem with Mr. Williams's excessive-force claim is that the body-worn camera recordings "blatantly contradict" his allegations. *See Waters*, 921 F.3d at 734. He claims the officers were "tasering him in [his] lower back and using excessive force while punching and kicking him while he was on the ground already in handcuffs and being detained." Second Am. Compl. at 2. That

is not what the body-worn camera recordings show. The recordings show the officers restraining Mr. Williams against a wall and handcuffing him. The officers did not taser, punch, or kick Mr. Williams. Because Mr. Williams's excessive-force allegations rest entirely on allegations the video evidence blatantly contradicts, he has not plausibly alleged excessive force in violation of the Fourth Amendment.[4]

3

Mr. Williams alleges that the officers' deliberate indifference to his medical needs violated his rights under the Eighth and Fourteenth Amendments and Article I, Section 5 of the Minnesota Constitution. *Id.* at 1, 3. Mr. Williams's claim under the Minnesota Constitution fails for a purely legal reason. "Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action." *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008) (citing *Mitchell v. Steffen,* 487 N.W.2d 896, 905 (Minn. Ct. App. 1992), *aff'd on other grounds*, 504 N.W.2d 198 (Minn. 1993); and *Bird v. State, Dep't of Pub. Safety*, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985)); *see also Smith v. Youngbird*, No. 21-cv-2249 (DSD/ECW), 2022 WL 3648700, at *9 (D. Minn. July 29, 2022), *report & recommendation accepted*, 2022 WL 3647862 (Aug. 24, 2022); *Porter v. Hennepin County*, No. 06-cv-3142 (JRT/FLN), 2008 WL 2202961, at *6 (D. Minn. May 23, 2008)

---

[4] The Second Amended Complaint does not connect its allegations that officers made "racial remarks, racist jokes, and racial slurs" during the arrest to any one legal theory. *See generally* Second Am. Compl. It doesn't matter because Mr. Williams's allegations that the officers said racist things (or verbally abused him in any way) are blatantly contradicted by the officers' body-worn camera recordings. In other words, regardless of what legal theory Mr. Williams might attach to these allegations, the facts wouldn't support it.

("Unlike 42 U.S.C. § 1983, Minnesota has no statutory scheme that creates a private right of action for violations of the Minnesota Constitution."). And courts in this District have found no basis to conclude there is a private right of action for deliberate indifference under Article I, Section 5 of the Minnesota Constitution. *Bakambia v. Craane*, No. 22-cv-2922 (PJS/DTS), 2024 WL 578886, at *9 n.7 (D. Minn. Jan. 5, 2024) ("[T]here is no private right of action pursuant to Article I, Section 5 of the Minnesota Constitution."), *report & recommendation aff'd as modified*, 2024 WL 620167 (D. Minn. Feb. 14, 2024); *Holmes v. Minn. DOC*, No. 23-cv-2969 (PJS/DJF), 2023 WL 11841211, at *4 (D. Minn. Dec. 13, 2023) ("[T]his Court—like others before it—has not uncovered any legal authority indicating that the Minnesota Supreme Court has found a cause of action under the Minnesota Constitution regarding the specific provision (the prohibition against cruel or unusual punishment) invoked by Mr. Holmes . . . ."), *report & recommendation adopted in relevant part*, 2024 WL 2956632 (D. Minn. June 12, 2024); *Youngbird*, 2022 WL 3648700, at *9 ("As to equal protection and cruel and unusual punishment, Plaintiff has not cited any legal authority indicating the Minnesota Supreme Court has found a cause of action for damages under either provision, and the Court has not located any such authority."). Mr. Williams's claim under the Minnesota Constitution will be dismissed.

Whether Mr. Williams asserts his deliberate-indifference claim as a pretrial detainee under the Fourteenth Amendment or as a prisoner under the Eighth Amendment, the standard is the same. *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024). Mr. Williams must allege facts plausibly showing "two components: an objective component, which 'requires a plaintiff to demonstrate an objectively serious medical need,'

13

and a subjective component, which 'requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need.'" *Id.* (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (2009)). A medical need is objectively serious if "it either has been diagnosed by a physician as requiring treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014) (quotations omitted). "Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Mr. Williams does not allege facts plausibly showing either component. Mr. Williams alleges "he was not given any medical attention for the injuries he suffered during this police brutality [and] use of excessive force." Second Am. Compl. at 3. While in jail, "he still has not been given treatment for these serious injuries he suffered" arising from the arrest. *Id.* And he clarifies that the injuries he complains of resulted from "getting beaten by these officers." *Id.* The problem (again) is that the video evidence blatantly contradicts Mr. Williams's allegations; it establishes the officers did not use anything approaching the force Mr. Williams alleges. If that is so, it would be a mistake to credit allegations that the officers' use of the force caused Mr. Williams to suffer obvious injuries that required a doctor's attention. Regardless, the Second Amended Complaint does not describe Mr. Williams's injuries in a way that shows or would permit a plausible inference that the injuries were so obvious a layperson would recognize the need for medical

14

attention. Because the objective prong is not met, the subjective prong fails too—the officers could not disregard a need that did not exist. And the Second Amended Complaint does not connect the officers to any duty to provide treatment to Mr. Williams after his detention in the Hennepin County Jail. *See id.* at 3 (alleging he "still has not been treated for these injuries").

4

Mr. Williams's § 1983 claims against the City are analyzed under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *Monell*'s basic rule is "that civil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom." *Los Angeles County v. Humphries*, 562 U.S. 29, 30–31 (2010). In other words, a municipality cannot be held liable under § 1983 because it employed a tortfeasor, but it may be "sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . [only if] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Municipalities also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. To show a custom,

> the plaintiff must prove (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the

> officials of that misconduct; and (3) an injury by acts pursuant to the governmental entity's custom.

*Mitchell v. Kirchmeier*, 28 F.4th 888, 899–900 (8th Cir. 2022) (cleaned up). More fundamentally, where the municipal officer violated no constitutional right, the municipality cannot be liable under *Monell*. *See Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018); *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017).

Mr. Williams has not plausibly shown that any officer violated his constitutional rights. His *Monell* claim against the City could be dismissed on just this basis. *See Whitney*, 887 F.3d at 861. If he had shown a constitutional violation, Mr. William has not alleged facts plausibly showing that the City maintains a policy or custom of using excessive force on arrestees. Listing past instances of police misconduct, with no further details, is insufficient to show a municipal custom. *See Mitchell*, 28 F.4th at 899–900.

5

"[Section] 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship, [but] the statute does not provide a general cause of action for race discrimination." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (cleaned up). "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights," though the statute is not "limited to existing contractual relationships" and "protects the would-be contractor along with those who already have made contracts, . . . thus appl[ying] to discrimination that blocks the creation of a contractual relationship that does not yet exist." *Id.* at 468–69 (cleaned up). Here, the Second Amended Complaint identifies no impaired contractual

relationship, and it is difficult to understand how the case might concern a contract or contracts. The § 1981 claim will therefore be dismissed.

6

Under Minnesota law, a negligence claim has four elements: "'(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury.'" *Fenrich v. The Blake School*, 920 N.W.2d 195, 201 (Minn. 2018) (quoting *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001)). Here, apart from mentioning the "Tort of Negligence" on its first page, the Second Amended Complaint identifies no negligence theory. The pleading alleges the officers acted intentionally to harm Mr. Williams by tasing, punching, and kicking him. Second Am. Compl. at 2. The pleading does not identify how the officers might have acted negligently to harm Mr. Williams. For these reasons, the negligence claim will be dismissed.[5]

---

[5] On December 11, 2024, Mr. Williams filed a Motion for Evidentiary Hearing. ECF No. 55. Though the purpose of the requested hearing is not clear, it seems Mr. Williams would like to call witnesses who could testify favorably on his behalf regarding the injuries he claims to have suffered. *See id.* Because Mr. Williams has not shown a plausible basis for liability with respect to any of his claims, there is no justification for a damages-related hearing. The motion will be denied.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion for Judgment on the Pleadings [ECF No. 44] is **GRANTED**.

2. Plaintiff's Motion for Evidentiary Hearing [ECF No. 55] is **DENIED**.

3. Plaintiff's Second Amended Complaint [ECF No. 8] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 14, 2025

s/Eric C. Tostrud
Eric C. Tostrud
United States District Court